IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL NO. 3:05CV512-C

ROBERT WILSON, JR.,  )
      Plaintiff,  )
  )
vs.  )    <u>**MEMORANDUM AND RECOMMENDATION**</u>
  )
JO ANNE B. BARNHART,  )
Commissioner of Social  )
Security Administration,  )
      Defendant.  )
  )

**THIS MATTER** is before the Court on the Plaintiff's "Motion for Summary Judgment" (document #12) and "Memorandum in Support ..." (document #13), both filed September 1, 2006; and Defendant's "Motion For Summary Judgment" (document #16) and "Memorandum in Support of the Commissioner's Decision" (document #17), both filed November 16, 2006. This case has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B), and these motions are now ripe for disposition.

Having considered the written arguments, administrative record, and applicable authority, the undersigned will respectfully recommend that Plaintiff's Motion for Summary Judgment be <u>denied</u>; that Defendant's Motion for Summary Judgment be <u>granted</u>; and that the Commissioner's decision be <u>affirmed</u>.

## I. <u>PROCEDURAL HISTORY</u>

On January 24, 2003, the Plaintiff filed an application for Social Security Disability benefits ("DIB"), alleging he was unable to work as of September 29, 1999, due to severe lower back pain. The Plaintiff's claim was denied initially and on reconsideration.

Plaintiff requested a hearing, which was held on May 3, 2005. On May 26, 2005, the ALJ issued a decision denying the Plaintiff's claim. The Plaintiff filed a timely Request for Review of Hearing Decision. On November 10, 2005, the Appeals Council denied Plaintiff's request for review, making the hearing decision the final decision of the Commissioner.

The Plaintiff filed this action on April 19, 2006, and the parties' cross-motions for summary judgment are now ripe for the Court's consideration.

## II. FACTUAL BACKGROUND

The Plaintiff testified that he was born on August 11, 1952, and was 52 years-old at the time of the hearing; that he had a driver's license; that he had completed high school; that he could read and write; that he had prior work experience as a long distance truck driver; that he performed some household chores (folding clothes and loading the dishwasher); that he was able to mow the lawn using a self-propelled lawnmower; that he was unable to work due to back pain that made it impossible to sit or drive for extended periods; but that he was then taking only four or five Aleve each day for pain.

A Vocational Expert ("VE") classified the Plaintiff's prior work experience as a long distance truck driver as heavy and skilled.

The ALJ then gave the VE the following hypothetical:

> [W]e've got two different age groups here ... 45 to 49 inclusive and 50 to 54 inclusive, and please let me know if there'd be any change in your testimony based on those age groups. Assume this individual has a high school education and past work as you've just described ... could perform a range of light work ... where there would be no climbing or crawling, no overhead work, no overhead reaching, and only occasional stooping, kneeling, or crouching ... would there be jobs such an individual could perform?

(Tr. 58.)

The VE testified that with these limitations, the Plaintiff could work as a telephone interviewer, a general information clerk, and a hand packer, and that 7,300 of these jobs were available in North Carolina.

On April 2, 2003, Robert Gardner, M.D., completed a Physical Residual Functional Capacity Assessment, noting that Plaintiff could occasionally lift 20 pounds and frequently lift 10 pounds; that he could sit, stand, and/or walk 6 hours in an 8-hour workday; that his ability to push and/or pull was unlimited; that Plaintiff had no nonexertional limitations; and that Plaintiff had told his doctor that he could mow the lawn. After reviewing the Plaintiff's medical chart, Dr. Gardner stated that the Plaintiff had full range of motion in all extremities, including his lower back, that he had normal ("5/5") muscle strength, that he was able to walk without difficulty; and that he had the residual functional capacity for light work.

Although the Plaintiff assigns error to the ALJ's treatment of the opinion of his treating physician, Leon Dickerson, M.D., discussed below, the parties have not assigned error to the ALJ's recitation of the medical records (presented to the ALJ at or after the hearing). Moreover, the undersigned has carefully reviewed the Plaintiff's medical records and finds that the ALJ's recitation is accurate. Accordingly, the undersigned adopts the ALJ's statement of the medical record, as follows:

> The claimant has a history of low back pain (Exhibit IF). He was injured while working in March 1998 and received ongoing treatment for his back pain from Elmer B. Pinzon, M.D. The claimant was diagnosed with lumbar degenerative disc disease and underwent a discography and facet joint nerve blocks, therapeutic in January 2000. Dr. Pinzon opined that the discography confirmed that the L4-5 and L5-S1 were moderately to severely degenerative. In March 2000, Dr. Pinzon performed a successful right L4-5 facet joint nerve block, an L4-5, L5-S1 discography and a right L4-5, L5-S1 interdiscal eletrothermal annuloplasty (IDET). He was completely pain free (Exhibits 6F and 8F).

Dr. Pinzon reviewed the May 2000 MR1 of the claimant's lumbar spine, and noted that it showed a mild broad-based subligamentous diskal extrusion without effacement of the thecal sac. The L5 nerve roots exited freely, and the SI roots showed no effacement or displacement. Dr. Pinzon further noted that there was very mild perineural fat loss about the left S1 nerve root, and that the L4-5 intervertebral disc showed a very gentle bulge without central foraminal stenosis or nerve root entrapment. On May 11, 2000, Dr. Pinzon predicted "most of these symptoms that he has should improve with natural recovery". The claimant was permitted to ** return to work on a four hour a day basis (Exhibit 8F, page 16).

Leon A. Dickerson, M.D., noted in July 2000, that the MRI scan of the claimant's back showed evidence of degenerative disc disease with a possible annular tear, but no nerve root compression, and no foraminal or spinal stenosis. Upon examination, Dr. Dickerson noted that his back was without spasm, obvious deformity, or tenderness to palpation. The claimant had forward flexion of hands to a foot above the floor, full extension, full lateral bending, 5/5 strength, 2+ deep tendon reflexes and sensory within normal limits. Dr. Dickerson further noted that the straight leg raises were negative and that the claimant's hips were nontender with full range of motion (Exhibit 8F, page 10).

In August 2001, Dr. Dickerson gave the claimant permission to go the golf course and hit some easy golf balls. Dr. Dickerson noted in October 2001 that the claimant still had pain off and on in his back and he should return as needed (Exhibits 3F and 9F). Upon careful consideration of the entire record, I find that the claimant has the medically determinable impairment of lumbar degenerative disc disease. As this impairment causes more than minimal functional limitations in the claimant's ability for heavy lifting, it is a severe impairment (Exhibit 8F)....

The claimant was examined on June 2, 2000 by Roy A. Majors, M.D., for "further evaluation and treatment of his shoulder". Dr. Majors noted a positive impingement sign. He further noted that the claimant was neurologically intact with no evidence of instability (Exhibit 8F, page 15). In July 2000, Dr. Majors reported that the MRI arthrogram showed no evidence of a rotator cuff tear, and that the claimant had a normal variant of his ligamentous structures in his shoulder (Exhibit 8F, page 9). In September 2000, Dr. Majors noted that the claimant had full active and passive range of motion of his shoulder. In November 2000, Dr. Majors noted that the x-rays of the claimant's cervical spine appeared normal, that the claimant had a normal MRI of his shoulder, that he would not benefit from surgical management, and that his next recommendation was pain management (Exhibit 8F).

He was evaluated for pain care in March 2001. Paul K. Jaszewski, M.D., observed that the claimant was able to walk with a reasonable gait and was able to stand without difficulty. Dr. Jaszewski assessed the claimant in April 2001 with left shoulder and arm pain of unclear etiology, and not related to cervical spine

4

pathology. Dr. Jaszewski recommended conservative treatment and told the claimant in June 2001 to return to the pain clinic only as needed (Exhibit 11F)....

The November 1999 lumbosacral spine x-rays demonstrated normal alignment of the lumbar vertebral bodies, no bony lesions, fractures or subluxations, and only mild degenerative disc space narrowing at L5-S1 compared to L4-5. Vertebral body heights were maintained and the paravertebral soft tissues were normal. On November 29, 1999, based upon his lumbar spine physical examination and the x-rays, Dr. Pinzon diagnosed the claimant with only "mild lumbar DDD" (Exhibit 8F).

The claimant did not exercise and Dr. Dickerson, his treating physician, was concerned of his "deconditioning". In December 1999, Dr. Dickerson stated "I would certainly like him to get out of the house a little bit. . . get a second opinion .... Currently, he is simply wasting time." Similarly, in March 2000, Dr. Pinzon advised the claimant to start initiating gradual walking activities because of his mildly deconditioned state (Exhibit 8F).

In October 2000, the claimant was evaluated by Dr. Sweet for the purposes of a second opinion. Dr. Sweet reported that the claimant had good strength in all four extremities, that his sensation was intact C5-T1, L4-S1 bilaterally, that his deep tendon reflexes were intact and equal and no Babinski's, that his gait was slightly stiff, that he was two and one half inches from touching his toes on trunk flexion, that his straight leg raising test was negative bilaterally, that he had a negative Tinel, that he had a good range of motion of the shoulders, and that his peripheral pulses were intact. Dr. Sweet "reviewed the x-rays, MRI scan, CT scan, etc. which showed no evidence of ruptured disc, pinched nerve, or surgical lesion". Dr. Sweet noted that the claimant did not have proven instability, and there was no evidence of herniated nucleus pulposus or stenosis. Dr. Sweet felt "his complaints are far out of proportion to his physical examination and x-ray findings". Dr. Sweet opined that the claimant was at maximum surgical improvement, and that "he should be weaned off his narcotics and continue to work". He rated him a 2% permanent partial disability of the back. He ended his October 2000 letter to Dr. Pinzon with the statement: "I will not see him again in this office" (Exhibit 7F).

Similarly, Dr. Jaszewski opined in June 2001 that he had nothing to offer for the claimant and that the claimant was not receiving "a whole lot of treatment from our clinic". Dr. Jaszewski stated "I am not necessarily convinced that Mr. Wilson is motivated to necessarily improve. Unfortunately I really have no other treatments to recommend" (Exhibit 11F, page 2). In August 2001, he was given permission to hit balls at the golf course, and in August 2002, he was restricted to light activities (Exhibit 3F).

In March 2003, he reported that he read three or more hours daily, attended church two to three times monthly and Bible study two to three times weekly, he drove,

made his bed along with his wife, mowed the grass with a self-propelled mower, and put dishes in the dishwasher (Exhibit 4E). The consultative examiner reported in March 2003 that the claimant was able to transfer about the room without difficulties, that his strength was intact, that he did not require use of any assistance device, and that his gait was within normal limits (Exhibit 4F). The claimant was examined in April 2005 with complaints of lower back pain by Mark Le, M.D. Dr. Le noted that the claimant's sensory and motor exams were normal, that he moved all extremities, that he had normal strength, and that his reflexes were good in all extremities (Exhibit 10F)....

In January 2001, Dr. Dickerson limited the claimant to lifting twenty pounds occasionally and fifteen pounds frequently with no prolonged bending, stooping, squatting or kneeling. Dr. Dickerson added that he should work four hours a day for two weeks, five hours a day for two weeks, six hours a day for two weeks, etc. up to eight hours (Exhibit 8F, page 3). In August 2001, Dr. Dickerson limited the claimant to "twenty pounds bending, no repetitive lifting", and in August 2002, Dr. Dickerson felt that the claimant was restricted from doing anything but very light activities (Exhibits 3F and 9F).

(Tr. 22-23, 25-26.)

The ALJ considered all of the above-recited evidence and determined that Plaintiff was not "disabled" for Social Security purposes. It is from this determination that the Plaintiff appeals.

### III. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The district court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986), quoting Richardson v. Perales, 402 U.S. 389, 401 (1971), the Fourth Circuit defined "substantial evidence" thus:

> Substantial evidence has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

See also Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence").

The Fourth Circuit has long emphasized that it is not for a reviewing court to re-weigh the evidence, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. Hays v. Sullivan, 907 F.2d at 1456 (4th Cir. 1990); see also Smith v. Schweiker, 795 F.2d at 345; and Blalock v. Richardson, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome – so long as there is "substantial evidence" in the record to support the final decision below. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## IV. DISCUSSION OF CLAIM

The question before the ALJ was whether at any time the Plaintiff became "disabled" as that term of art is defined for Social Security purposes.[1] The ALJ considered the above-recited evidence

---

[1] Under the Social Security Act, 42 U.S.C. § 301, et seq., the term "disability" is defined as an:
inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . .

7

and found after the hearing that Plaintiff had not engaged in substantial gainful activity at any time relevant to the decision; that the Plaintiff suffered lumbar degenerative disc disease, which was a severe impairment within the meaning of the Regulations; but that Plaintiff's impairment or combination of impairments did not meet or equal the criteria of any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4 (a.k.a. "the Listings"); that Plaintiff was unable to perform his past relevant work and had no transferable skills; that the Plaintiff had the residual functional capacity for light work[2] not requiring any climbing, crawling or working overhead, and no more than occasional stooping, kneeling or crouching; that at the time of his alleged onset date, the Plaintiff was a "younger individual," and on the date of the decision, was a "person closely approaching advanced age"; and that the Plaintiff had completed high school.

The ALJ then correctly shifted the burden to the Secretary to show the existence of other jobs in the national economy which the Plaintiff could perform. The VE's testimony, stated above and based on a hypothetical that factored in the limitations discussed above, provided substantial evidence that there were a significant number of jobs in the national economy that the Plaintiff could perform.

The Plaintiff essentially appeals the ALJ's determination of his residual functional capacity ("RFC"). See Plaintiff's "Motion for Summary Judgment" (document #12) and "Memorandum

---

Pass v. Chater, 65 F. 3d 1200, 1203 (4th Cir. 1995).

[2]"Light" work is defined in 20 C.F.R. § 404.1567(b) as follows:
Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

8

in Support" (document #13). However, the undersigned finds that there is substantial evidence supporting the ALJ's finding concerning the Plaintiff's residual functional capacity.

The Social Security Regulations define "residual functional capacity" as "what [a claimant] can still do despite his limitations." 20 C.F.R. § 404.1545(a). The Commissioner is required to "first assess the nature and extent of [the claimant's] physical limitations and then determine [the claimant's] residual functional capacity for work activity on a regular and continuing basis." 20 C.F.R. § 404.1545(b).

The ALJ's opinion clearly indicates that he did, in fact, consider whether Plaintiff's alleged impairments limited his ability to work. Relying on evidence in the medical record, Agency medical evaluators found that Plaintiff could occasionally lift 20 pounds and frequently lift 10 pounds; that he could sit, stand, and/or walk 6 hours in an 8-hour workday; that his ability to push and/or pull was unlimited; and that the Plaintiff had no nonexertional limitations and had the residual functional capacity for a full range of light work.

The ALJ found the Plaintiff not disabled, however, based on a residual functional capacity for light work not requiring any climbing, crawling or working overhead, and no more than occasional stooping, kneeling or crouching. In other words, the ALJ concluded that the Plaintiff had a <u>lower</u> residual functional capacity than reviewing experts concluded was supported by the objective medical record, including making a significant allowance for the Plaintiff's lower back pain.

The undersigned notes that no physician has opined that the Plaintiff is disabled. Indeed, the ALJ concluded that Dr. Dickerson's repeated opinions that the Plaintiff needed to be exercising and could perform light work supported his conclusion concerning the Plaintiff's RFC. The Plaintiff

9

assigns error to the ALJ's treatment of Dr. Dickerson's opinions, contending summarily, that is, without making reference to or discussing Dr. Dickerson's medical chart or other evidence in the record, that Dr. Dickerson's opinions actually support a finding of disabled. The undersigned concludes, however, that even assuming that Dr. Dickerson had opined that the Plaintiff was disabled, the ALJ's decision to give that opinion little or no weight would have been supported by substantial evidence.

The Fourth Circuit has established that a treating physician's opinion need not be afforded controlling weight. Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992). A treating physician's opinion on the nature and severity of the alleged impairment is entitled to controlling weight only if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. See 20 C.F.R. §§ 404.1527(d)(2) (2002); and Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Therefore, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Mastro, 270 F.3d. at 178, citing Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996).

As the ALJ correctly noted, Dr. Dickerson repeatedly made objective findings and expressed opinions that the Plaintiff could lift and perform other activities that are consistent with a RFC for a limited range of light work. Following his initial diagnosis of the Plaintiff's degenerative disc disease in September 1999, the only opinion that Dr. Dickerson expressed concerning the Plaintiff's capacity to perform daily activities was that Plaintiff "doing very little," but that he (Dr. Dickerson) would like to see him "get out of the house." On July 7, 2000, Dr. Dickerson noted that Plaintiff was able to bend to the point that his hands were one foot above the floor, and that he had full

extension, full lateral bending, "5/5" (normal) strength, and negative straight leg raising. On January 30, 2001, Dr. Dickerson limited Plaintiff to lifting no more than 23 pounds at one time, and no more than 15 pounds frequently, with no prolonged bending, stooping, squatting, and kneeling, and instructed Plaintiff to gradually <u>increase</u> his hours to an 8-hour work day. On August 21, 2001, Dr. Dickerson stated that Plaintiff could work with up to 20 pounds while bending and that he should avoid repetitive lifting. He added that it was "okay" for the Plaintiff to go to the golf course and hit golf balls if he so desired.

The remainder of the medical record supports both the ALJ's treatment of Dr. Dickerson's opinions and the ALJ's ultimate conclusion that the Plaintiff was not disabled. Specifically, in November 1999, Dr. Pinzon concluded that the Plaintiff's condition was "mild." The same month, Dr. Wood noted that Plaintiff was able to stand up and walk around the room and that his MRI showed only "minimal" degenerative changes. Dr. Pinzon noted on June 20, 2000 that despite the Plaintiff's lumbar disc disease, he had normal bony architecture, a functional range of motion, and functional strength.

On October 23, 2000, Dr. Sweet noted that Plaintiff had good strength in all four extremities; that he could bend to within 2 ½ inches of touching his toes; and that his back was spasm-free and non-tender. Dr. Sweet opined that the Plaintiff's complaints were "far out of proportion to his physical examination and x-ray findings"; that Plaintiff should be weaned off his narcotic pain medications and continue to work; and that Plaintiff was not a surgical candidate.

On June 21, 2001, Dr. Jaszewski opined that the Plaintiff was not really motivated to improve.

On March 18, 2003, the Plaintiff underwent a consultative examination, which revealed full

11

range of motion in all joints, including his thoracolumbar spine; that Plaintiff had a normal gait and tandem walk; that he was able to move about the room without difficulty; that he could stand on his heels and toes without difficulty; and that his grip and muscle strength was "5/5."

The Plaintiff also admitted at the hearing that he was taking only moderate amounts of over the counter medications to control his pain. On this point, see Mickles v. Shalala, 29 F.3d 918, 921 (4th Cir. 1994) (evidence of treatment and medical regimen followed by claimant is proper basis for finding of no disability) (Hall, J., concurring for divided panel); and Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) ("If a symptom can be reasonably controlled by medication or treatment, it is not disabling"), citing Purdham v. Celebrezze, 349 F.2d 828, 830 (4th Cir. 1965).

The record also establishes that the Plaintiff engaged in significant daily life activities, such as bathing and dressing himself, making his bed, folding laundry, washing dishes, mowing the lawn, driving, reading for three hours or more each day, and attending church and a bible study regularly. On the relevance of an ability to engage in substantial daily activities to a disability claim, see, e.g., Mickles, 29 F.3d at 921 (plaintiff performed "wide range of house work" which supported finding of non-disability); and Gross, 785 F.2d at 1166 (evidence that plaintiff washed dishes and generally performed household chores supported finding of non-disability).

The ALJ also properly applied the standard for determining a claimant's residual functioning capacity based on subjective complaints of pain and, in this case, the record contains substantial evidence to support the ALJ's conclusion that Plaintiff's testimony was not fully credible.

The determination of whether a person is disabled by nonexertional pain or other symptoms is a two-step process. "First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities

and which could reasonably be expected to produce the pain or other symptoms alleged." Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996), citing 20 C.F.R. § 416.929(b); and § 404.1529(b); 42 U.S.C. § 423(d)(5)(A). If there is such evidence, then the ALJ must evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects [his] ability to work." Id. at 595, citing 20 C.F.R. § 416.929(c)(1); and § 404.1529(c)(1). The regulations provide that this evaluation must take into account:

> not only the claimant's statements about his or her pain, but also "all the available evidence," including the claimant's medical history, medical signs, and laboratory findings; any objective medical evidence of pain (such as evidence of reduced joint motion, muscle spasms, deteriorating tissues, redness, etc.); and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it.

Craig, 76 F.3d at 595 (citations omitted).

The record contains evidence of Plaintiff's lumbar degenerative disc disease – which could be expected to produce some of the pain claimed by Plaintiff – and thus the ALJ essentially found that Plaintiff could satisfy the first prong of the test articulated in Craig. However, the ALJ also correctly evaluated the "intensity and persistence of [his] pain, and the extent to which it affects [his] ability to work," and found Plaintiff's subjective description of his limitations not credible.

"The only fair manner to weigh a subjective complaint of pain is to examine how the pain affects the routine of life." Mickles, 29 F.3d at 921, citing Hunter v. Sullivan, 993 F.2d 31 (4th Cir. 1992) (claimant's failure to fill prescription for painkiller, which itself was indicated for only mild pain, and failure to follow medical and physical therapy regimen, supported ALJ's inference that claimant's pain was not as severe as he asserted). In this case, the record before the ALJ clearly established an inconsistency between Plaintiff's claims of inability to work and his objective ability

to carry on a moderate level of daily activities, that is, Plaintiff's ability to take care of his personal needs, to perform some household chores, to mow the lawn, to read, and to attend church, as well as the objective evidence in the medical record, discussed above.

Although the medical records establish that the Plaintiff experienced pain and mental and emotional difficulties to some extent or degree, as the Fourth Circuit has noted, it is the ALJ's responsibility, not the Court's, "to reconcile inconsistencies in the medical evidence." Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976). Moreover, the facts noted by the ALJ clearly support the ultimate conclusion that Plaintiff suffered from, but was not disabled from working, by his combination of impairments.

Simply put, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary (or the Secretary's designate, the ALJ)." Mickles, 29 F.3d at 923, citing Simmons v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987). This is such a case, as it contains substantial evidence to support the ALJ's determinations of the Plaintiff's residual functional capacity.

## V. RECOMMENDATIONS

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that Plaintiff's "Motion For Summary Judgment" (document #12) be **DENIED;** that Defendant's "Motion for Summary Judgment" (document #16) be **GRANTED**; and that the Commissioner's determination be **AFFIRMED.**

## VI. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this

Memorandum must be filed within ten (10) days after service of same. Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989); United States v. Rice, 741 F. Supp. 101, 102 (W.D.N.C. 1990). Failure to file objections to this Memorandum with the district court constitutes a waiver of the right to de novo review by the district court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder, 889 F.2d at 1365. Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. Diamond, 416 F.3d at 316; Wells, 109 F.3d at 201; Page, 337 F.3d at 416 n.3; Thomas v. Arn, 474 U.S. 140, 147 (1985); Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties; and to the Honorable Robert J. Conrad, Jr.

**SO RECOMMENDED AND ORDERED.**

Signed: November 20, 2006

_Carl Horn, III_

Carl Horn, III
United States Magistrate Judge