# IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

## CIVIL CASE NO. 3:05cv512

| | |
|---|---|
| **ROBERT WILSON, JR.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **MEMORANDUM OF** |
| **vs.** ) | **DECISION AND ORDER** |
| ) | |
| **MICHAEL J. ASTRUE,**[1] ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |
| _____ ) | |

**THIS MATTER** is before the Court on the Plaintiff's Motion for

Summary Judgment [Doc. 12], the Defendant's Motion for Summary

Judgment [Doc. 16], and the Plaintiff's Objections [Doc. 19] to the

Memorandum and Recommendation [Doc. 18] of Magistrate Judge Carl

Horn, III, and the Defendant's Response [Doc. 20] thereto.  Pursuant to 28

U.S.C. § 636(b) and the standing Orders of Designation of this Court, the

Court referred the parties' respective Motions for Summary Judgment to

---

[1]Michael J. Astrue replaced Jo Anne B. Barnhart as Commissioner of the Social Security Administration on February 12, 2007.  Accordingly, Michael J. Astrue is hereby substituted as the official-capacity defendant in this matter.  See Fed. R. Civ. P. 25(d).

the Magistrate Judge for a recommendation as to disposition of these motions.  Having conducted a *de novo* review of those portions of the recommendation to which specific objections were filed, and for the reasons set forth below, the Court hereby adopts the Magistrate Judge's Memorandum and Recommendation [Doc. 18] in its entirety.  Accordingly, the Defendant's Motion for Summary Judgment [Doc. 16] is granted, the Plaintiff's Motion for Summary Judgment [Doc. 12] is denied, and the decision of the Commissioner is affirmed.

## I.    PROCEDURAL BACKGROUND

The Plaintiff Robert Wilson filed an application for a Period of Disability and Social Security Disability Insurance Benefits on January 24, 2003, alleging that he had become disabled as of September 29, 1999, due to severe lower back pain.  (Tr. 83-85, 96).  The Plaintiff's claim was denied initially and on reconsideration.  (Tr. 66-69, 71-73).  The Plaintiff requested a hearing before an Administrative Law Judge (ALJ), which was held on May 3, 2005.  (Tr. 75).  On May 26, 2005, the ALJ issued a decision denying the Plaintiff's claim.  (Tr. 19-29).  On November 10, 2005, the Appeals Council denied the Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner subject to judicial

review.  (Tr. 5-8).  The Plaintiff filed this action on April 19, 2006, and

thereafter, the parties filed their respective motions for summary judgment.

On November 20, 2006, the Magistrate Judge entered a

Memorandum and Recommendation, recommending that the Plaintiff's

Motion for Summary Judgment be denied, that the Defendant's Motion for

Summary Judgment be granted, and that the Commissioner's

determination be affirmed.  The Plaintiff timely filed Objections to the

Magistrate Judge's Memorandum and Recommendation, and the

Defendant has responded to those Objections.  This matter is now ripe for

the Court's consideration.

## II.    FACTUAL BACKGROUND

### A.    Plaintiff's Testimony

The Plaintiff was born on August 11, 1952 and was 52 years old at

the time of the hearing before the ALJ.  (Tr. 42, 83).  The Plaintiff

completed high school and can read and write.  (Tr. 42-43).

The Plaintiff has prior work experience as a long distance truck

driver.  (Tr. 43).  He testified that he is no longer able to drive a truck like

he did in the past, because he can only drive for one or two hours at a time

before he needs to stop and either take medication, such as Motrin or

Aleve, or lie down for a couple of hours and rest.  (Tr. 45-46).  Because he

has not been working, the Plaintiff testified that he has not been able to

afford the medications that his doctors have prescribed for him.  (Tr. 46-

47).  However, he testified that he does take Aleve for pain relief.  (Tr. 44).

With respect to daily living activities, the Plaintiff testified that he is

able to make the bed, fold laundry, mow the lawn with a self-propelled lawn

mower, put dishes in the dishwasher, drive, and read for three hours or

more each day.  (Tr. 44, 126, 128).  He testified that he attends church two

to three times per month and goes to Bible study two to three times per

week.  (Tr. 127).  The Plaintiff further testified that he has difficulty with his

personal needs, such as dressing, shaving, and brushing his teeth.  (Tr.

51).  While the Plaintiff testified that he can squat, he cannot bend, stoop

or climb.  (Tr. 53).  He asserted that lifting a gallon of milk causes him

problems.  (Tr. 54).  The Plaintiff further testified that he cannot reach over

his head, and that although he can reach out in front of his body, he is not

capable of fully extending his arms.  (Tr. 53-54).

### B.    Plaintiff's Medical History

The Plaintiff's medical records reveal a history of low back pain.  He

was injured while working in March 1998 and received ongoing treatment

for his back pain from Elmer B. Pinzon, M.D. and Leon A. Dickerson, M.D. Lumboscracal spine x-rays in November 1999 revealed normal alignment of the lumbar vertebral bodies, no bony lesions, fractures or subluxations, and only mild degenerative disc space narrowing at L5-S1 compared to L4-5. Vertebral body heights were maintained, and the paravertebral soft tissues were normal. On November 29, 1999, Dr. Pinzon diagnosed the Plaintiff with mild lumbar degenerative disc disease. (Tr. 210).

In a follow-up visit in December, 1999, Dr. Dickerson noted his concern about the Plaintiff's deconditioning, noting that the Plaintiff was "quite sedentary." Dr. Dickerson noted, "I would certainly like him to get out of the house a little bit . . . get a second opinion . .. Currently, he is simply wasting time." (Tr. 209).

The Plaintiff underwent a discogram and facet joint nerve blocks in January, 2000. The discogram confirmed that the L4-5 and L5-S1 were moderately to severely degenerative. (Tr. 175-78). In March 2000, Dr. Pinzon performed a successful right L4-L5 facet joint nerve block, a L4-5, L5-S1 discogram, and a right L4-5, L5-S1 interdiscal electrothermal annuloplasty (IDET). (Tr. 206). The Plaintiff was essentially pain free after these procedures. (Tr. 205). Dr. Pinzon advised the Plaintiff to initiate

gradual walking activities because of his mildly deconditioned state. (Tr. 204).

On May 11, 2000, Dr. Pinzon reviewed a recent MRI of the Plaintiff's lumbar spine and noted that it showed a mild broad-based subligamentous diskal extrusion without effacement of the thecal sac. He noted that the L5 nerve roots exited freely, and the S1 roots showed no effacement or displacement. Dr. Pinzon further noted that there was very mild perineural fat loss about the left S1 nerve root, and that the L4-5 intervertebral disc showed a very gentle bulge without central foraminal stenosis or nerve root entrapment. Dr. Pinzon opined that "most of these symptoms that he has should improve with natural recovery." The Plaintiff was allowed to return to work on a four-hour a day basis. (Tr. 197-98).

The Plaintiff was examined on June 2, 2000 by Roy A. Majors, M.D. for evaluation and treatment of his shoulder. Dr. Majors noted a positive impingement sign. He further noted that the Plaintiff was neurologically intact with no evidence of instability. (Tr. 196). In July 2000, Dr. Majors reported that the MRI arthrogram showed no evidence of a rotator cuff tear, and that the Plaintiff had a normal variant of his ligamentous structures in his shoulder. (Tr. 190). In September 2000, Dr. Majors noted

that the Plaintiff had full active and passive range of motion in his shoulder. (Tr. 187). In November 2000, Dr. Majors noted that the x-rays of the Plaintiff's cervical spine appeared normal, that the Plaintiff had a normal MRI of his shoulder, that he would not benefit from surgical management, and that his next recommendation would be pain management. (Tr. 185-86).

In July 2000, Leon A. Dickerson, M.D. noted that the Plaintiff's back showed evidence of degenerative disc disease with a possible annular tear at L5-S1, but no nerve root compression, and no foraminal or spinal stenosis. Upon examination, Dr. Dickerson noted that the Plaintiff's back was without spasm, obvious deformity, or tenderness to palpitation. The Plaintiff had forward flexion of his hands to a foot above the floor, full extension, full lateral bending, 5/5 strength, 2+ deep tendon reflexes, and sensory within normal limits. Dr. Dickerson further noted that the Plaintiff's straight leg raises were negative and that his hips were non-tender with full range of motion. (Tr. 191).

In October 2000, the Plaintiff was evaluated by Raymond C. Sweet, M.D. for the purposes of a second opinion. Dr. Sweet reported that the Plaintiff had good strength in all four extremities, that his sensation was

intact C5-T1, L4-S1 bilaterally, that his deep tendon reflexes were intact and equal and no Babinski's, that his gait was slightly stiff, that he was two and one half inches from touching his toes on trunk flexion, that he had a good range of motion of the shoulders, and that his peripheral pulses were intact. Dr. Sweet reviewed the Plaintiff's x-rays, MRI scan, and CT scan and noted no evidence of ruptured disc, pinched nerve or surgical lesion. Dr. Sweet noted that the Plaintiff did not have proven instability, and there was no evidence of herniated nucleus pulposus or stenosis. Dr. Sweet remarked that it appeared that the Plaintiff's "complaints are far out of proportion to his physical examination and x-ray findings." Dr. Sweet opined that the Plaintiff was at maximum surgical improvement, and that "he should be weaned off his narcotics and continue to work." Dr. Sweet gave the Plaintiff a 2% permanent partial disability of the back. He ended his letter to Dr. Pinzon by stating, "I will not see him again in this office." (Tr. 180-81).

In January 2001, Dr. Dickerson limited the Plaintiff to lifting twenty-three pounds occasionally and fifteen pounds frequently with no prolonged bending, stooping, squatting or kneeling. Dr. Dickerson added that the Plaintiff should work four hours a day for two weeks, five hours a day for

8

two weeks, six hours a day for two weeks, and so on until the Plaintiff returned to work for eight hours per day.  (Tr. 184).

The Plaintiff was evaluated for pain care by Paul K. Jaszewski, M.D. Dr. Jaszewski observed that the Plaintiff was able to walk with a reasonable gait and was able to stand without difficulty.  Dr. Jaszewski assessed the Plaintiff in April 2001 with left shoulder and arm pain of unclear etiology and not related to cervical spine pathology.  Dr. Jaszewski recommended conservative treatment and told the Plaintiff in June 2001 to return to the pain clinic only as needed.  Noting that the Plaintiff was "not receiving a whole lot of treatment from our clinic," Dr. Jaszewski stated "I am not necessarily convinced that [the Plaintiff] is motivated to necessarily improve.  Unfortunately I really have no other treatments to recommend." (Tr. 248-54).

In August 2001, Dr. Dickerson limited the Plaintiff to "twenty pounds bending, no repetitive lifting."  Dr. Dickerson gave the Plaintiff permission to go to the golf course and hit some easy golf balls.  (Tr. 244).  Dr. Dickerson noted in October 2001 that the Plaintiff still had "pain off and on in his back" and that he should return as needed.  (Tr. 243).  In August

2002, Dr. Dickerson noted that he felt that the Plaintiff should be restricted from doing anything but very light activities. (Tr. 241).

In March 2003, the Plaintiff received a consultative examination from Carl T. Augustus, M.D. (Tr. 162-64). Dr. Augustus noted that the Plaintiff had full range of motion and a normal gait and was able to move about the room without difficulty. (Tr. 163).

On April 2, 2003, Robert Gardner, M.D., completed a Physical Residual Functional Capacity Assessment, noting that the Plaintiff could occasionally lift 20 pounds and frequently lift 10 pounds; that he could sit, stand, and/or walk 6 hours in an 8-hour workday; that his ability to push and/or pull was unlimited; and that the Plaintiff had no nonexertional limitations. After reviewing the Plaintiff's medical records, Dr. Gardner concluded that the Plaintiff had full range of motion in all extremities, including his lower back, that he had normal ("5/5") muscle strength, that he was able to walk without difficulty, and that he had the residual functional capacity for light work. (Tr. 166-73).

In April 2005, the Plaintiff was examined by Mark Le, M.D. Dr. Le noted that the Plaintiff had a somewhat crooked gait, tenderness in his back, limited flexion in his hip, and that he was unable to perform straight

leg raising.  However, Dr. Le also noted that the Plaintiff's sensory and motor examinations were normal, that he moved all extremities, that he had normal strength, and that his reflexes were good in all extremities.  (Tr. 245-46).

## C.   Vocational Expert Testimony

A Vocational Expert (VE) testified at the ALJ hearing and classified the Plaintiff's prior work experience as a long distance truck driver as heavy and semi-skilled.  (Tr. 58).  The ALJ posed the following hypothetical to the VE:

> Q      I want to ask you if you would to consider a hypothetical individual, and we've got two different age groups here.  We've got 45 to 49 inclusive and 50 to 54 inclusive, and please let me know if there'd be any change in your testimony based on those age groups.  Assume this individual has a high school education and past work as you've just described.  We assume this individual could perform a range of light work, as that is defined in [The Dictionary of Occupational Titles], where there would be no climbing or crawling, no overhead work, no overhead reaching, and only occasional stooping, kneeling, or crouching, and again I'm using occasional as it's defined in The Dictionary of Occupational Titles.  Would there be jobs such an individual could perform and if so could give us some examples?

(Tr. 58). The VE testified that with these limitations, and as to either age group, the Plaintiff could work as a telephone interviewer (3,000 positions available locally, 100,000 positions available nationally); a general information clerk (1,600 positions available locally, 70,000 positions available nationally); and a hand packer (1,700 positions available locally, 60,000 positions available nationally). (Tr. 58-59).

**D. ALJ's Findings**

Upon consideration of the entire record, the ALJ made the following findings:

> 1. The Plaintiff met the disability insured status requirements of the Social Security Act on his alleged date of disability onset and he would continue to meet those requirements at least through June 30, 2007;
>
> 2. The Plaintiff has not engaged in substantial gainful activity since the alleged onset date of disability, September 29, 1999;
>
> 3. The Plaintiff has the severe impairment of lumbar degenerative disc disease, but does not have an impairment or combination of impairments that meets or equals an impairment listed in Appendix 1, Subpart P, Regulations No. 4;
>
> 4. The Plaintiff's allegations regarding symptoms and limitations are only partially credible;

5.  The Plaintiff retains the residual functional capacity for light work and is capable of lifting/carrying/pushing and pulling twenty pounds occasionally and ten pounds frequently; sitting about six hours in an eight-hour workday; and standing or walking about six hours in an eight-hour workday, with normal breaks.  While the Plaintiff is not able to climb, crawl or do overhead work, he can occasionally stoop, kneel, and crouch.  The Plaintiff can sustain work on a regular and continuing basis;

6.  The Plaintiff is unable to perform past relevant work as a tractor-trailer driver;

7.  The Plaintiff was a younger individual age 45-49 at the alleged onset date and is currently a person closely approaching advanced age.  He completed high school;

8.  The Plaintiff has no transferable skills from any past relevant work and/or transferability of skills is not an issue in this case;

9.  Although the Plaintiff's additional limitations do not allow him to perform the full range of light work, considering the Plaintiff's age, education and work experience, there are a significant number of jobs in the national economy that the claimant could perform, including work as a telephone interviewer, a general information clerk, and a hand packer.  Thus, a finding of "not disabled" is appropriate under the framework of Medical-Vocational Rules 202.21 and 202.14; and

10.  The Plaintiff has not been under a "disability" at any time through the date of the ALJ's decision.

(Tr. 28-29). Accordingly, the ALJ concluded that the Plaintiff was not entitled to a period of disability or disability insurance benefits under Sections 216(i) and 223, respectively, of the Social Security Act. (Tr. 29).

## III. STANDARD OF REVIEW

A party may file written objections to a magistrate judge's memorandum and recommendation within ten days after being served with a copy of the recommended disposition. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Such objections must be made "with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." United States v. Midgette, 478 F.3d 616, 621 (4th Cir.), cert. denied, 127 S. Ct. 3032, 168 L. Ed. 2d 749 (2007). The Court is not required to review, under a *de novo* or any other standard, the factual or legal conclusions of the magistrate judge to which no objections have been raised. Thomas v. Arn, 474 U.S. 140, 150, 106 S. Ct. 466, 472, 88 L. Ed. 2d 435 (1985). Additionally, the Court need not conduct a *de novo* review where a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982).

The Court has conducted a careful review of those portions of the Memorandum and Recommendation that were not the subject of a specific objection and concludes that they are correct. Accordingly, these portions of the Memorandum and Recommendation are adopted and hereby incorporated in full. As to those portions of the Memorandum and Recommendation to which specific objections were filed, the Court will conduct a *de novo* review. <u>See</u> 28 U.S.C. § 636(b); Fed. R. Civ. P. 72.

## IV.    ANALYSIS

### A.    Standard of Review for Social Security Appeals

The Court's review of a final decision of the Commissioner is limited to: (1) whether substantial evidence support the Commissioner's decision, <u>see</u> <u>Richardson v. Perales</u>, 402 U.S. 389, 390, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971), and (2) whether the Commissioner applied the correct legal standards, <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990). The Court does not review a final decision of the Commissioner *de novo*. <u>Smith v. Schweiker</u>, 795 F.2d 343, 345 (4th Cir. 1986).

The Social Security Act provides that "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The Fourth Circuit has defined

"substantial evidence" as "more than a scintilla and [doing] more than creat[ing] a suspicion of the existence of a fact to be established.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401, 91 S.Ct. at 1427).

The Court may not re-weigh the evidence or substitute its own judgment for that of the Commissioner, even if it disagrees with the Commissioner's decision, so long as there is substantial evidence in the record to support the final decision below.  Hays, 907 F.2d at 1456; Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## B.    The Plaintiff's Objections

The Plaintiff makes two primary objections to the Magistrate Judge's Memorandum and Recommendation.  First, the Plaintiff argues that the Magistrate Judge erred in determining that the ALJ's decision was supported by substantial medical evidence.  Second, the Plaintiff argues that the Magistrate Judge erred in finding that the ALJ properly evaluated the Plaintiff's credibility.

### 1.    Substantial Medical Evidence

The ALJ concluded that the Plaintiff retains the residual functional capacity for light work, and while the Plaintiff's additional limitations do not allow him to perform the full range of light work, considering his age, education and work experience, there are a significant number of jobs in the national economy that the Plaintiff can still perform.  (Tr. 29).  The Magistrate Judge concluded that the ALJ's findings in this regard are supported by substantial medical evidence.

The Plaintiff argues that the Magistrate Judge erred in determining that the ALJ's decision was supported by substantial medical evidence because the ALJ failed to analyze properly the opinions of the Plaintiff's treating physicians; failed to conduct the required function-by-function assessment for establishing residual functional capacity; and failed to consider nonexertional impairments contained in the record.  The Court will address each of these arguments in turn.

The Plaintiff first argues that the ALJ erred in selectively relying upon only portions of Dr. Dickerson's opinion "without explaining why all of the opinion was not accepted."  The Plaintiff further argues that the ALJ failed

to consider the restrictions "imposed and continually renewed" by his treating physician.

The Plaintiff fails to identify what portions of Dr. Dickerson's opinion he contends was not accepted by the ALJ. In any case, a careful review of the ALJ's decision reveals that the ALJ did consider the opinions of the Plaintiff's treating physician in assessing the Plaintiff's residual functional capacity. Specifically, the ALJ noted that in January 2001, Dr. Dickerson had limited the Plaintiff to lifting twenty pounds occasionally and fifteen pounds frequently with no prolonged bending, stooping, squatting or kneeling, and had recommended that the Plaintiff work four hours a day for two weeks, five a hours a day for two weeks, and so on until the Plaintiff reached an eight-hour day. (Tr. 184). In August 2001, Dr. Dickerson limited the Plaintiff to "twenty pounds bending, no repetitive lifting" (Tr. 161), and in August 2002, Dr. Dickerson felt that the Plaintiff should be restricted from doing anything but very light activities (Tr. 241). The ALJ specifically credited these opinions, finding these activities to be consistent with the Plaintiff's light residual functional capacity. (Tr. 26). Accordingly, the Plaintiff's argument that his treating physician's opinions were disregarded is without merit.

18

Next, the Plaintiff argues that the ALJ failed to conduct the required function-by-function assessment for establishing residual functional capacity. The Plaintiff also argues that the ALJ failed to consider the evidence of nonexertional impairments contained in the record.

In evaluating a claimant's residual functional capacity, the ALJ must consider all of a claimant's restrictions and limitations, including pain. SSR 96-8p. In determining exertional capacity, the ALJ must consider each function: sitting, standing, walking, lifting, carrying, pushing, and pulling. Id. In determining non-exertional capacity, the ALJ must consider the claimant's ability "to perform activities such as postural (e.g., stooping, climbing), manipulative (e.g., reaching, handling), visual (seeing), communicative (hearing, speaking), and mental (e.g., understanding and remembering instructions and responding appropriately to supervision)." Id. The residual functional capacity assessment must also include a narrative discussion of how the evidence supports each conclusion, with citations to medical facts and non-medical evidence. Id.

In the present case, the ALJ specified the Plaintiff's limitations with respect to lifting and carrying, sitting, standing, and walking, and also specified certain nonexertional limitations, including bending, stooping,

squatting, and kneeling. (Tr. 24-25). In making this assessment, the ALJ cited specific medical evidence, including medical records from Dr. Dickerson and the report of the state Agency physician. (Tr. 24-27). The ALJ's assessment of the Plaintiff's residual functional capacity not only reflected all of the functional limitations identified by the state Agency physician, but also included additional and greater limitations that the ALJ found were warranted based on the evidence in the record. For these reasons, the Court finds that there is substantial evidence to support the ALJ's determination of the Plaintiff's residual functional capacity, and that this assessment was adequately explained.

In sum, the Court concludes that the ALJ's determination of the Plaintiff's residual functional capacity for light work is supported by substantial evidence. Accordingly, the Plaintiff's Objections to the Magistrate Judge's Recommendation in this regard are overruled.

### 2. Credibility Assessment

The ALJ found that the Plaintiff's statements regarding the intensity, duration, and limiting effects of his symptoms were only partially credible in light of the objective medical findings, the conservative treatment required, the lack of strong pain medications, and his sustained degree of daily

activities. (Tr. 25). The Magistrate Judge concluded that the ALJ correctly found that the Plaintiff's subjective description of his limitations were not fully credible.

The Plaintiff contends that the Magistrate Judge erred in concluding that the ALJ properly evaluated the Plaintiff's credibility. Specifically, the Plaintiff argues that the ALJ failed to provide a proper analysis of the Plaintiff's credibility as required by Craig v. Chater, 76 F.3d 585 (4th Cir. 1996) and Social Security Ruling 96-7p. The Plaintiff further argues that the ALJ took certain testimony and statements in the medical records "out of context" and improperly excluded certain medical evidence which supported Plaintiff's credibility.

Assessing the credibility of a claimant's symptoms of pain is a two-step process. Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996); SSR 96-7p. First, a claimant must establish, by objective medical evidence, "the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and *which could reasonably be expected to produce the pain or other symptoms alleged*." Craig, 76 F.3d at 594 (emphasis in original)(quoting 20 C.F.R. §§ 416.929(b) and 404.1529(b)). If a claimant meets this burden, the ALJ must then evaluate

21

the manner in which the intensity and persistence of these symptoms affect the claimant's ability to work.  <u>Craig</u>, 76 F.3d at 595.  In so doing, the ALJ must consider

> not only the claimant's statements about [his] pain, but also "all the available evidence," including the claimant's medical history, medical signs, and laboratory findings; any objective medical evidence of pain (such as evidence of reduced joint motion, muscle spasms, deteriorating tissues, redness, etc.); and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it.

<u>Craig</u>, 76 F.3d at 595 (internal citations omitted).  "Because he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight."  <u>Shively v. Heckler</u>, 739 F.2d 987, 989 (4th Cir. 1984).

In the present case, there is substantial evidence in the record to support the ALJ's finding that the Plaintiff suffered from lumbar degenerative disc disease, a condition which could be reasonably expected to produce the type of pain claimed by the Plaintiff.  This first step having been satisfied, the ALJ was then required to evaluate the manner in

which the intensity and persistence of these symptoms affected the Plaintiff's ability to work. See Craig, 76 F.3d at 595.

In that regard, the ALJ properly concluded that the Plaintiff's subjective description of his limitations was not fully credible. In making this credibility determination, the ALJ specifically took into consideration the Plaintiff's statements, the objective medical findings, the Plaintiff's treatment record, the medications he was taking, and his activities of daily living. (Tr. 25). In particular, the ALJ noted the relatively limited objective medical findings in the record. In November 1999, Dr. Pinzon diagnosed the Plaintiff with "mild" lumbar disc disease. (Tr. 210). In June 2000, Dr. Pinzon noted that despite the lumbar disc disease, the Plaintiff had a functional range of motion and functional strength. (Tr. 192). In July 2000, Dr. Dickerson noted that the Plaintiff's back was without spasm, obvious deformity, or tenderness to palpation. The Plaintiff had forward flexion of his hands to a foot above the floor, full extension, full lateral bending, 5/5 strength, 2+ deep tendon reflexes, and sensory within normal limits. Dr. Dickerson further noted that the Plaintiff's straight leg raises were negative and that his hips were non-tender with full range of motion. (Tr. 191). In October 2000, Dr. Sweet noted that the Plaintiff had good strength in all

four extremities and was able to bend within a few inches of touching his toes. (Tr. 181). Dr. Sweet further noted that Plaintiff had no back spasms and was non-tender. (Tr. 181). He opined that the Plaintiff's complaints of back pain were "far out of proportion to his physical examination and x-ray findings." (Tr. 181). In June 2001, Dr. Jaszewski opined that the Plaintiff was not really motivated to improve. (Tr. 248).

In March 2003, the Plaintiff underwent a consultative examination and was noted to have a full range of motion in all joints, including his thoracolumbar spine, and a normal gait and tandem walk. He was able to move about the room without difficulty, and his grip and muscle strength were normal. (Tr. 163).

In April 2005, Dr. Le noted that the Plaintiff had a somewhat crooked gait, tenderness in his back, limited flexion in his hip, and that he was unable to perform straight leg raising. However, Dr. Le also noted that the Plaintiff's sensory and motor examinations were normal, that he moved all extremities, that he had normal strength, and that his reflexes were good in all extremities. (Tr. 245-46). These objective medical findings provide substantial evidence that the Plaintiff was not completely disabled.

With respect to the Plaintiff's activities of daily living, the Plaintiff stated that he was able to make the bed, fold laundry, mow the lawn with a self-propelled mower, wash dishes, drive, and read for three hours or more each day.  (Tr. 44, 126, 128).  He reported going to church two to three times per month and to Bible study two to three times per week.  (Tr. 127).  This evidence of the Plaintiff's daily activities support the ALJ's determination that the Plaintiff's allegations of disabling pain were only partially credible.  See Rogers v. Barnhart, 204 F.Supp.2d  885, 894 (W.D.N.C. 2002).  Additionally, at the time of the hearing, the Plaintiff was only taking 4-5 Aleve for pain relief (Tr. 44), a fact which undercuts the Plaintiff's claim of disabling pain.  See id. (evidence of limited medication and efficacy of such medication was inconsistent with complaints of disabling pain).[2]  Based upon all of this evidence, the ALJ properly concluded that the Plaintiff's subjective allegations of his impairments were only partially credible.

---

[2]The Plaintiff objects to the ALJ's reliance on the Plaintiff's testimony that he takes over-the-counter medications in concluding that the Plaintiff's pain was not disabling.  The Plaintiff argues that the ALJ failed to address the fact that the Plaintiff also testified that he could not afford to buy the pain medications prescribed to him by his doctors.  That the Plaintiff could not afford to pay for his prescribed medications, however, has no bearing on the fact that the Plaintiff was apparently able to achieve some degree of pain relief from over-the-counter medications.  Accordingly, the ALJ's reliance of this evidence was not improper.

## V.    CONCLUSION

Upon conducting a *de novo* review of the Magistrate Judge's Memorandum and Recommendation [Doc. 18], the Plaintiff's Objections [Doc. 19], and all other relevant pleadings, the Court adopts the factual findings and legal conclusions of the Magistrate Judge's Memorandum and Recommendation [Doc. 18] and concludes for those reasons, as well as the reasons set forth herein, that the Plaintiff's Motion for Summary Judgment [Doc. 12] should be denied; the Defendant's Motion for Summary Judgment [Doc. 16] should be granted; and the Commissioner's determination should be affirmed.

Accordingly, **IT IS, THEREFORE, ORDERED** that the Magistrate Judges Memorandum and Recommendation [Doc. 18] filed November 20, 2006 is hereby **ADOPTED**, and the Plaintiff's Objections [Doc. 19] to the Magistrate Judge's Memorandum and Recommendation [Doc. 18] are **OVERRULED**.

**IT IS FURTHER ORDERED** that the Plaintiff's Motion for Summary Judgment [Doc. 12] is **DENIED**; the Defendant's Motion for Summary Judgment [Doc. 16] is **GRANTED**; and the Commissioner's decision is hereby **AFFIRMED**.

**IT IS FURTHER ORDERED** that this case is **DISMISSED**, and judgment shall issue simultaneously herewith.

**IT IS SO ORDERED.**

Signed: March 7, 2008

Martin Reidinger
United States District Judge